UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORRENA BRADFORD,

               Plaintiff,                         Case No. 2:20-cv-10773
                                                    District Judge David M. Lawson
v.                                            Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

       Plaintiff Correna Bradford brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security (Commissioner)

denying her application for Disability Insurance (DI) benefits.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 17), Plaintiff's reply brief (ECF No. 18), and the administrative record (ECF No. 11).

### A.    Background and Administrative History

Plaintiff alleges her disability began on April 18, 2015 (ECF No. 11-5, PageID.370), at which point she was 37 years old.  She filed her application for disability insurance benefits (DIB) on August 3, 2016.  (ECF No. 11-5, PageID.370-387.)  In her disability report, she lists diastasis recti, hiatal hernia requiring repair, sciatic nerve disease, GERD/gastroesophageal reflux disease, degenerative disc disease, chronic back pain, back strain, chronic rotator cuff pain, liver cysts, depression and anxiety, insomnia, and migraines as limiting her ability to work.  (ECF No. 11-6, PageID.405.)  Her application was denied on March 7, 2017.  (ECF No. 11-4, PageID.283-299.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 11-4, PageID.303-304.)  On December 6, 2018, ALJ John Carlton held a hearing, at which Plaintiff and a vocational expert (VE), Allison Reno, testified.  (ECF No. 11-2, PageID.91-128.)  On March 14, 2019, ALJ Carlton issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 11-2, PageID.68-81.)

2

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 11-4, PageID.365-368.)  However, on February 5, 2020, the Appeals Council denied Plaintiff's request for review.  (ECF No. 11-2, PageID.59-65.)  Thus, ALJ Carlton's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 24, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 1913 pages of medical records, which were available to the ALJ at the time of his March 14, 2019 decision.  (ECF No. 11-7, PageID.501-2426.)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 18, 2015, the alleged onset date.  (ECF No. 11-2, PageID.73.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease with radiculopathy, diastasis recti, post right shoulder arthroscopic surgery, adhesive capsulitis of the right shoulder, left shoulder degenerative joint disease, left rotator cuff tendonitis, migraines, and obesity.  (ECF No. 11-2, PageID.73-75.)  At **Step 3**, the ALJ found that Plaintiff

3

did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 11-2, PageID.75.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . except she cannot climb ladders, ropes and scaffolds; no slippery or uneven surfaces; she can occasionally climb stairs and ramps; occasionally balance, stoop[,] crouch, crawl and kneel but no overhead reaching bilaterally; no exposure to unprotected heights or around dangerous machinery.

(ECF No. 11-2, PageID.75-79.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (ECF No. 11-2, PageID.80.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as document preparer, sorter, and final assembler.  (ECF No. 11-2, PageID.80-81.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 18, 2015.  (ECF No. 11-2, PageID.81.)

### D.    Standard of Review

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of her treating physician Dr. Preeti Gudimella.  (ECF No. 14, PageId.2443-2446; ECF No. 18, PageID.2485-2489.)  The Commissioner opposes Plaintiff's motion, asserting that the ALJ appropriately discounted Dr. Gudimella's opinion, and that substantial evidence supports the ALJ's RFC assessment.  (ECF No. 17, PageID.2457-2478.)  For the reasons that follow, I agree.

### 1.     Dr. Gudimella's treatment history and November 2018 medical source statement

Dr. Gudimella, a resident primary care provider with Central Michigan University (CMU) Family Medicine, treated Plaintiff for back and shoulder pain

6

three times beginning in July 2018 before completing the subject medical source

statement (MSS) during a fourth visit on November 12, 2018.  (ECF No. 11-17,

PageID.2113, 2197-2204, 2207-2210, 2224-2227.)  The MSS is one page long.

Dr. Gudimella listed Plaintiff's diagnoses, and then checked boxes indicating

Plaintiff had moderate impairment in her upper and lower extremities, and could:

occasionally lift/carry/pull a maximum of less than 10 pounds; frequently

lift/carry/pull less than 10 pounds; stand/walk a total of 2 hours in an 8-hour day;

and sit less than 6 hours in an 8-hour day.  (ECF No. 11-17, PageID.2113.)

Beyond listing Plaintiff's diagnoses, Dr. Gudimella wrote only that she could do

no prolonged standing or lifting of heavy objects, her limitations would disrupt a

regular job schedule "[m]ost of the hours" per month, and her limitations have

existed since June 2, 2018.  (ECF No. 11-17, PageID.2113.)

### 2.  The ALJ gave Dr. Gudimella's opinion "little weight"

The ALJ gave Dr. Gudimella's opinion "little weight," stating:

> Dr. Preeti Gudimella reported in a medical source statement that the
> claimant could lift and carry less than ten pounds, sit for less than six
> hours and stand/walk for two hours in an eight hour workday.  [She]
> also reported these functional limitations existed since June 2018 (Ex.
> 37F).  I give little weight to this opinion because it is a mere form
> filled out by a resident at the CMU clinic.  While the doctor does have
> a treating relationship with the claimant, the treatment history is quite
> brief.  [She] is not familiar with the claimant's medical history.

(ECF No. 11-2, PageID.79.)

### 3.  RFC and opinion evidence

7

The Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990), and *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(b).[2]  The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  ALJs "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological

---

[2] These regulations apply to claims filed before March 27, 2017, like Plaintiff's.

consultants . . . [,]" but "are not required to adopt any prior administrative medical findings[.]"  20 C.F.R. § 404.1513a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at 408.

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight.  If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

SSR 96-8p, 1996 WL 374184, at *7.  In other words, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ will consider the following factors when deciding the weight to give any medical opinion: (1) examining relationship; (2) treatment relationship;

(3) supportability; (4) consistency with the record as a whole; and (5) specialization. 20 C.F.R. § 404.1527(c). Special care must be taken when considering the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's medical opinion," 20 C.F.R. § 404.1527(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (*per curiam*) (internal quotations omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. § 404.1527(c), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the

opinion of the treating source or makes findings consistent with the opinion"; or

(3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the

procedural safeguard of reasons—even though she has not complied with the terms

of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.

2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.*,

No. 15-cv-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and

recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich.

Mar. 21, 2016). "In the last of these circumstances, the procedural protections at

the heart of the rule may be met when the 'supportability' of a doctor's opinion, or

its consistency with other evidence in the record, is *indirectly* attacked via an

ALJ's analysis of a physician's other opinions or his analysis of the claimant's

ailments." *Friend*, 375 F. App'x at 551.

The United States Court of Appeals for the Sixth Circuit has stressed the

importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir. 1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

> ### 4.      The Court should find that the ALJ properly discounted Dr. Gudimella's MSS

For the reasons that follow, the Court should find that the ALJ gave good reasons for discounting Dr. Gudimella's opinion, and substantial evidence supports his determination.

> #### a.      Cursory nature of the opinion (supportability)

First, the ALJ reasonably discounted Dr. Gudimella's opinion on the basis of its extremely cursory nature.  The Sixth Circuit has recognized that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (citation omitted); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:16-cv-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017) (finding a medical source statement that was in "check-box format" to be "an impotent addition to the record with little to no persuasive value").

Indeed:

Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's "check-box form" of functional limitations that

12

> "did not cite clinical test results, observations, or other objective
> findings . . . ." *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011);
> *see also Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL
> 899207, at ----, 14-15 (E.D. Mich. Mar. 3, 2015) (citing cases); *Ashley
> v. Comm'r of Soc. Sec.*, 1:12-cv-1287, 2014 WL 1052357, at *8 n. 6
> (W.D. Mich. Mar. 19, 2014) (citing cases). These cases recognize
> that the administrative law judge properly gave a check-box form little
> weight where the physician provided no explanation for the
> restrictions entered on the form and cited no supporting objective
> medical evidence.

*Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016).

Such is the case here. As described above, Dr. Gudimella's MSS is a one-page check-box form with little if any explanation for the functional limitations checked. Beyond opining that Plaintiff could not stand for a prolonged period of time or lift heavy objects, Dr. Gudimella only listed Plaintiff's diagnoses. (ECF No. 11-17, PageID.2113.) But diagnoses alone say nothing of the severity of a claimant's symptoms or any resulting functional limitations. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).

On this basis alone, the ALJ appropriately afforded little weight to Dr. Gudimella's MSS. However, the ALJ provided additional good reasons for discounting the opinion, which are either unchallenged by Plaintiff or otherwise supported by the record.

### b.      Length of treatment relationship

Although Defendant concedes that the ALJ's statement regarding Dr. Gudimella's unfamiliarity with Plaintiff's medical history does not align with the record (ECF No. 17, PageID.2465-2466), the ALJ also discounted Dr. Gudimella's MSS based on Plaintiff's limited history with Dr. Gudimella.  Indeed, as Plaintiff acknowledges (ECF No. 14, PageID.2444), Dr. Gudimella only treated Plaintiff three times over the course of a few months before providing her cursory opinion on Plaintiff's limitations at the fourth appointment (ECF No. 11-17, PageID.2113, 2197-2204, 2207-2210, 2224-2227).  Not only is length of treatment a valid consideration, 20 C.F.R. § 404.1527(c); *Wilson*, 378 F.3d at 544, but, especially in combination with the cursory nature of Dr. Gudimella's opinion, the limited number of visits supports the ALJ's decision to afford the opinion little weight.

### c.    Specialty and consistency with the record as a whole

In his analysis of Dr. Gudimella's MSS, the ALJ further stated that she was a resident at the CMU clinic.  (ECF No. 11-2, PageID.79.)  In reply to Defendant's argument that such analysis amounted to the appropriate consideration of Dr. Gudimella's specialty (ECF No. 17, PageID.2462-2463, 2466-2467), Plaintiff asserts that medical specialty was not a factor the ALJ considered (ECF No. 18, PageID.2486-2487).  I disagree.

Although the ALJ never specifically referenced Dr. Gudimella's specialty or used the word "specialty" in his analysis, such consideration, as well as

14

consistency with the record as a whole, may be inferred by reading the ALJ's

statement regarding Dr. Gudimella's resident status in context.  *See Athey v.*

*Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL 4537317, at *4 (E.D. Mich. Sept.

11, 2014) (reasoning that it is appropriate to read an ALJ's decision as a whole);

*Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).  It is clear, from the

placement of his analysis of Dr. Gudimella's opinion in the decision, that the ALJ

intended to compare Dr. Gudimella's qualifications to that of Dr. Bernard

Noveloso, Plaintiff's general primary care provider, and Dr. Edward Brophy, an

orthopedic doctor, to whose opinions he afforded greater weight.  Specifically, in

the two paragraphs almost immediately preceding that regarding Dr. Gudimella's

MSS, the ALJ stated:

> As for the opinion evidence, the claimant's treating physician Dr.
> Novelosa [sic] reported in June 2018 that the claimant's claim of
> disability and inability to work seem inconsistent with the findings of
> his physical examinations and the general clinical impression of the
> claimant.  Dr. Novelosa [sic] encouraged the claimant to focus less on
> what she is unable to do and start building upon what she can do" (Ex.
> 38F, p. 80).  I give great weight to this statement because Dr.
> Novelosa has a great long standing treatment relationship with the
> claimant and is fully familiar with all her complaints and limitations.
>
> I give partial weight to the State Agency medical consultant Edward
> Brophy, D.O. opinion in Ex. 1A.  Although the opinion is somewhat
> supported by the evidence of record the evidence in file also indicates
> that the claimant would not be able to stand for six hours.

(ECF No. 11, PageID.79.)

From the above, although he did not explicitly say it, the Court can infer the ALJ discounted Dr. Gudimella's opinion, in part, based on its inconsistency with the record as a whole *as well as her specialty, which was non-existent.* This is so because residents are not considered to be specialists in Michigan, the state in which Dr. Gudimella treated Plaintiff, but are generalists, and are thus subject to a local, rather than a national standard of care. *Bahr v. Harper-Grace Hosps.*, 528 N.W.2d 170, 172 (Mich. 1995.) It also bears noting that in the relevant medical records, Dr. Gudimella's progress notes are followed by the attestation of a supervising physician who has reviewed and approved of the services performed. (*See, e.g.*, ECF No. 11-17, PageID.2200.) Plaintiff further argues, in her reply brief, that the ALJ never showed awareness that Dr. Brophy is an orthopedic surgeon, but Defendant contends that the code next to Dr. Brophy's name (*i.e.*, "029") in his medical opinion indicates his specialty (ECF No. 17, PageID.2463 n. 3) (*see* ECF No. 11-3, PageID.266), and Plaintiff does not challenge the accuracy of that statement. In fact, Plaintiff recognizes that Dr. Brophy is an orthopedic surgeon (ECF No. 18, PageID.2486-2487); nevertheless, the ALJ appears to have found the RFC *more restrictive* than Dr. Brophy's opinion suggested, rejecting Dr. Brophy's finding that Plaintiff could stand for six hours in a workday and assigning her to sedentary work. (Compare ECF No. 11-2, PageID.75-76, 79 with ECF No. 11-3, PageID.263.) And in any case, it is clear that the ALJ discussed Dr.

16

Gudimella's resident status as a comparison to the medical opinions he afforded greater weight.

Further, Plaintiff has waived any argument that the ALJ's analysis of these opinions was flawed or unsupported by substantial evidence.  Plaintiff only cursorily states in a footnote within her summary judgment motion: "[Plaintiff] . . . objects to the ALJ's handling of the opinion of Dr. Novelosa, as the ALJ is assigning 'great weight' to an opinion that is not made in vocationally or functionally specific terms.  (ECF No. 11-2, PageID.79).  Instead, it appears to be an opinion regarding whether or not she is disabled, which is, of course, a determination reserved for the Commissioner."  (ECF No. 14, PageID.2446 n.3.) This is a throwaway claim wholly unsupported by citation to the record or relevant law, and as such, need not be reviewed by the Court.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quotation marks and citations omitted); *Jones v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [the plaintiff's] 'argument' or find law supporting her claims.  This Court does not conduct a *de novo* review

17

in social security proceedings, and certainly cannot be expected to craft an argument on [the plaintiff's] behalf.  As such, this assignment of error should be deemed waived.") (quotation marks and citations omitted).

### d.  Date disabled

Finally, the ALJ noted that Dr. Gudimella stated Plaintiff's functional limitations existed since June 2018.  (ECF No. 11-2, PageID.79.)  Such a statement certainly undermines Plaintiff's claim that she was disabled beginning in August 2015.

Defendant argues in its summary judgment motion that additional substantive evidence supports the ALJ's RFC determination (ECF No. 17, PageID.2471-2478), but the Court need not address these arguments, as Plaintiff only asserts in reply that the ALJ failed to follow its own procedural regulations to analyze Dr. Gudimella's opinion (ECF No. 18, PageID.2489), and as indicated in detail above, that argument lacks merit.

### F.  Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 3, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE